IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| ANGELA WOOTEN, SONJA DOWELL, TRACY LEMON, CRYSTIA DAVIS-MITCHELL, SHUNDA PHILLIPS, LESLIE PARSON, JR., JEFFREY VALENTINE, and DONNA HARVEY | ) ) ) ) ) ) | Case No. 2:06-cv-02571-SHM-dkv |
| Individually and on Behalf of Others Similarly Situated, | ) ) ) | |
| PLAINTIFFS, | ) ) ) | |
| v. | ) ) | |
| SMITH & NEPHEW, INC., | ) ) | |
| DEFENDANT. | ) ) | |

## SECOND AMENDED SETTLEMENT AGREEMENT

## I.    INTRODUCTION

This Settlement Agreement (herein the "Settlement Agreement" or the "Agreement") is entered into by and between (1) Named Plaintiffs Angela Wooten, Sonja Dowell, Tracy Lemon, Crystia Davis-Mitchell, Shunda Phillips, Leslie Parson, Jr., Jeffrey Valentine, and Donna Harvey, who filed this civil action on behalf of themselves individually and as class representatives on behalf of others claimed to be similarly situated (collectively referred to herein as the "Plaintiffs" or "Settlement Class Representatives"); (2) Yolanda Yvette Newson, and Kevin Gray, Sr., who filed individual and class charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"), (collectively referred to herein as "Settlement Class

Representatives"); (3) Lenora Woodhouse and Leno Perkins, who are named as class representatives in documents submitted to the court (collectively referred to herein as "Settlement Class Representatives"); (4) their Counsel of Record, David Sanford of Sanford, Wittels & Heisler, LLP, Grant Morris of the Law Offices of Grant E. Morris, and Jerry Gonzalez of Jerry Gonzalez, P.L.C. (collectively referred to herein as "Class Counsel"); and (5) Defendant Smith & Nephew, Inc. (also referred to herein as the "Company") by and through its Counsel of Record, Frederick J. Lewis and Thomas L. Henderson, of the firm Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

## II.   Litigation Background

On September 8, 2006, six current employees and one former employee of Smith & Nephew, Inc. brought a putative class action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended; the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended; and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-401 alleging discrimination based on race (African-American) with regard to, *inter alia,* pay, promotion and related promotional opportunities. Before the Company filed a responsive pleading, the parties entered into a stay of the litigation to determine whether the matter could be resolved through mediation after conducting informal discovery.

In December 2007, the parties filed a joint motion to lift the stay for the sole purpose of Plaintiffs' filing an amended complaint. An Amended Class Action Complaint filed on December 21, 2007 added Donna Harvey as a named Plaintiff with allegations of discrimination based on race (African-American) regarding failure to hire. In the Amended Complaint, Plaintiffs seek to represent a class of all African-Americans

who are or were current, former, or prospective employees who have been denied employment, equal pay, promotion, or related promotional opportunities.

The Company provided Plaintiffs' counsel with information on the named Plaintiffs and the putative class pursuant to an agreement providing for informal discovery. Additionally, Plaintiffs' counsel made an independent investigation of relevant facts. Following a two-day mediation on July 29-30, 2008, with a nationally-known mediator experienced in mediating putative and certified employment class actions, the parties reached agreement on the terms of a proper resolution of the individual and class claims.

The Settlement Class Representatives, Class Counsel, and the Company and its counsel believe that the informal discovery conducted to date and the independent investigation of relevant facts are sufficient to assess adequately the relative strengths and weaknesses of the respective parties' positions on the merits and class certification and to compromise the fundamental issues on a fair and equitable basis, as indicated by the signatures on this Settlement Agreement.

**III.   Jurisdiction of the Court**

The Court has jurisdiction over the parties and the subject matter of this action. The Class Complaint asserts claims that, if proven, would authorize the Court to grant the relief set forth in this Agreement. Venue is proper in the Western District of Tennessee. The Court will retain jurisdiction of this action solely for the purpose of entering any orders, judgments or decrees which may be necessary to effectuate the relief provided for herein.

IV.    **Definitions**

The following terms when used in this Settlement Agreement have the following meanings:

**"Charges of Discrimination"** mean EEOC Charge No. 490-2006-01740 filed by Angela Wooten; No. 490-2006-02230 filed by Sonja Dowell; No. 490-2006-01739 filed by Tracy Lemon; No. 490-2006-01743 filed by Crystia Davis-Mitchell; No. 490-2006-01744 filed by Shunda Phillips; No. 490-2006-02232 filed by Leslie Parson, Jr.; No. 490-2006-02227 filed by Jeffrey Valentine; No. 490-2007-03208 filed by Donna Harvey; No. 490-2006-02231 filed by Kevin Gray, Sr.; and Nos. 490-2007-03439 and 490-2007-03544 filed by Yolanda Yvette Newson.

**"Class Certification"** means certification under Federal Rules of Civil Procedure 23(a) and 23(b)(2).

**"Class Complaint"** is the original and any amended class action complaint of discrimination that Plaintiffs filed in this action on behalf of themselves and the putative class.

**"Class Counsel"** means Sanford, Wittels & Heisler, LLP; Law Offices of Grant E. Morris; and Jerry Gonzalez, P.L.C.

**"Court"** is the United States District Court for the Western District of Tennessee, Western Division.

**"Effective Date"** is the date on which the time for filing an appeal from the Court's grant of Final Approval has expired, or, if later, after any appeal has been finally resolved (including full resolution of any appellate review, requests for rehearing, rehearing *en banc* and petitions for writs of *certiorari*).

**"Final Approval"** means the date upon which the Court enters an order, after having determined this Agreement is fair, adequate, and reasonable to the Class as a whole, after: (1) notice to the Class; (2) an opportunity to submit timely objections; (3) appropriate discovery of the specifics of any such timely objections; and (4) a hearing on the fairness of the settlement. The date on which that order is entered by the Court is the "Final Approval Date."

**"Preliminary Approval"** is the entry of the Court's order granting preliminary approval of this Agreement, which reflects that the Court concludes that the terms of this Agreement appear sufficiently fair, reasonable and adequate to the Settlement Class as a whole to warrant notice to the Settlement Class, an opportunity for Settlement Class Members to object, and a fairness hearing to consider final approval of this Agreement. The date on which that order is entered by the Court is the "Preliminary Approval Date."

**"Released Parties"** are Smith & Nephew, Inc., its parent, subsidiaries, and affiliated corporations, divisions, and global business units, their predecessors and successors, and with respect to each such entity all of its past and present employees, officers, directors, shareholders, owners, insurers, agents, attorneys, representatives, assigns, and any other person or entity acting directly or indirectly in their interest.

**"Settlement Class"** or **"Settlement Class Member(s)"**, for settlement purposes only, are: a) those African-Americans who have not previously executed a release of claims against the Company employed by Defendant at the Company's Memphis, Tennessee facilities at any point during the period September 8, 2002 to the Preliminary Approval Date who, at any time during their employment, were paid less than a similarly situated white employee in the same position; (b) those African-American employees

who have not previously executed a release of claims covering all their employment tenure with the Company employed by Defendant at the Company's Memphis, Tennessee facilities at any point during the period September 8, 2002 to the Preliminary Approval Date who, at any time during their employment, sought another position with the Company but were not offered the position; and (c) those African-Americans who applied for a position with the Company's Memphis, Tennessee facilities during the period October 21, 2006 to the Preliminary Approval Date and were not offered employment and who have not previously executed a release of claims against the Company.

"**Settlement Class Representatives**" are Angela Wooten, Sonja Dowell, Tracy Lemon, Crystia Davis-Mitchell, Shunda Phillips, Leslie Parson, Jr., Jeffrey Valentine, Donna Harvey, Yolanda Yvette Newson, Kevin Gray, Sr., Lenora Woodhouse, and Leno Perkins.

## V.      Purposes of this Settlement Agreement

The parties have entered into this Settlement Agreement for the following purposes:

A.      To resolve all disputes covered by this Settlement Agreement in such a way as to avoid expensive and protracted litigation;

B.      To strengthen the Company's commitment to equal employment opportunity for African-Americans;

C.      To create an expedited procedure for implementing equitable relief and for distributing a monetary settlement to eligible members of the Settlement Class pursuant to the terms of this Agreement;

D.      To provide finality to the resolution of all claims and defenses asserted in the Class Complaint and the Charges of Discrimination filed with the EEOC; and

E.      To provide a mechanism for class certification by agreement under Federal Rules of Civil Procedure 23(a) and 23(b)(2).

## VI.   Release of Claims

### A.   Release

In consideration of the actions undertaken and/or to be undertaken by Defendant under the terms of this Agreement, including the equitable relief set forth herein and the monetary consideration to be paid to the individual Plaintiffs and Settlement Class Representatives, the Plaintiffs and Settlement Class Representatives, including their heirs, executors, administrators, and assigns, release and forever discharge Released Parties of and from any and all claims and causes of action of whatever kind and character, both known and unknown, in law or in equity, contract, tort, or public policy, which they may now have or which may hereafter arise from or relate to actions or inactions by Released Parties at any time prior to and through the Preliminary Approval Date, including, but not limited to, any claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended, the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended, the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-401, and any other federal, state, and local law.

In consideration of the promises contained herein and the benefits provided or to be provided to the Settlement Class Members hereunder, the Settlement Class Members, including their heirs, executors, administrators, and assigns, release and forever discharge Released Parties of and from any and all racial discrimination claims, which they may

now have or which may hereafter arise from or relate to actions or inactions by Released Parties at any time prior to and through the Preliminary Approval Date, including those both known and unknown racial discrimination claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended, the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended, the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-401 and Tennessee common-law claims asserted in the Class Complaint.

Before receiving any monetary relief under this Agreement, each Settlement Class Representative will be required to execute an acceptable full and final general release of any and all claims against Released Parties, and each Settlement Class Member will be required to execute an acceptable release of all claims against Released Parties asserted in the Class Complaint.

**B.    Waiver of Right to Seek Future Employment**

Any individual who files a claim for relief pursuant to this Agreement who has not been employed by the Company or who is no longer employed by the Company waives any and all rights or claims to employment, re-employment, or independent contractor status with Released Parties and agrees not to apply for or otherwise seek employment, re-employment, or independent contractor status with Released Parties and will be permanently removed from Released Parties' labor pool for purposes of hiring, rehiring, or independent contractor status.  Nothing in this provision is intended to affect the employment of those individuals currently employed on an at-will basis by Released Parties.

### C.   Dismissal of Civil Action

Plaintiffs and Defendant will file a joint notice or stipulation with the Court indicating that this civil action has been resolved to the satisfaction of all parties and requesting that this matter be dismissed with prejudice.

### D.   *Res Judicata* and Collateral Estoppel

Upon the Effective Date, the doctrines of *res judicata* and collateral estoppel will bind all Settlement Class Members with respect to all claims identified above in Section VI.A.  This Agreement may be pled as a full and complete defense to any subsequent action or other proceeding involving any person or party which arises out of the claims released and discharged by this Agreement.

### VII.   No Admission of Liability

Released Parties have denied and continue to deny any liability or wrongdoing. The terms of this Agreement represent a compromise of disputed claims and reflect the parties' recognition that litigation of these claims would burden all concerned and require a major commitment of time, resources, and money.  This Agreement and any relief undertaken pursuant to it are not to be offered or received in any proceeding against Released Parties as evidence of a presumption, inference, or admission of any liability or wrongdoing.  In the event that Final Approval of this Agreement is not attained, nothing herein will be deemed to waive any of the Company's objections and defenses, including, but not limited to, objections to class certification, and neither this Agreement nor the Court's Preliminary Approval will be admissible in any action or court regarding the propriety of class certification, regarding the substantive merits of the claims in this lawsuit, or regarding any other issue.

## VIII.   Confidentiality and Nondisclosure

Settlement Class Representatives, Settlement Class Members, and Class Counsel agree that they will not disclose the terms of this Agreement to any third party including, but not limited to, the media, except as is necessary in connection with the Court's proceedings and fairness hearing and the ability to communicate with the Class. Class Counsel will limit postings on its website about this action to the Notice of Class Action Settlement and the Claim Forms. Nothing in this provision prohibits disclosure of any monetary amount received to a spouse or agent responsible for preparation of tax returns provided such persons maintain the confidentiality of the information.

## IX.   Nonmonetary Relief

### A.   Duration and Implementation

The nonmonetary relief detailed herein will run for eighteen (18) months from the Effective Date, but will be extended for an additional six (6) months if there is a material breach of the terms of this Agreement during the first eighteen (18) months.

### B.   Mandatory Non-Discrimination Training

1.   **Non-Discrimination Policy** -- The Company will disseminate annually during the term of the Agreement to all employees a copy of its most recent Equal Employment Opportunity Policy and Unlawful Harassment Policy that explains in simple language its commitment to non-discrimination and non-harassment, how to report complaints internally, and the rights of employees to be free of any form of retaliation.  The Company will not be required to include information on how to report complaints to the appropriate administrative agencies so long as it continues to post such information in keeping with its current practice.

2.     **Scope and Content** -- All managers and supervisors at the Company's Memphis, Tennessee facilities who have authority to hire, promote, or select employees for training leading to advancement will be required to undergo training in proper selection procedures. Such training will include EEO and fair employment practices, the prohibition of discrimination on the basis of race, and the prohibition of retaliation for voicing a complaint of race discrimination.

3.     **Timing** – The training of managers and supervisors provided for in this section will be commenced within six months after the Effective Date and will be completed within twelve months of the Effective Date. All employees hired, promoted, or transferred after the Effective Date into positions that are subject to the manager and supervisor training requirements of this section will complete their training within six months after they assume such positions. To accommodate new hires, refresher courses, and delinquent employees, the Company will provide the managerial and supervisory training at least two times a year.

4.     **Conduct of Training** -- The training provided for in this section may consist of appropriate on-line training courses or may be conducted by qualified outside consultants or by the Company's own qualified employees.

5.     **Documentation of Completion of Training** -- The Company will maintain records of attendance at the trainings provided for in this section, including the manager or supervisor's name, date of attendance, and topic of training. Any manager or supervisor who fails to complete the required training within the provided time period will be subject to discipline and potential loss of managerial or supervisory responsibilities.

C.    **Selection Process**

1.    **Standardized Procedures** -- The Human Resources ("HR") staff at the Company's Memphis, Tennessee facilities will implement standardized procedures appropriate for selecting applicants for all posted positions at the Company's Memphis, Tennessee facilities. Positions listed on the attached exhibit entitled "Positions Not Posted" will not be posted and will be excluded from the standardized procedures set forth in this Agreement. All persons involved in selecting applicants will be instructed in those procedures and will be required to follow those procedures.

2.    **Interviews** -- The HR staff at the Company's Memphis, Tennessee facilities will implement standardized interview procedures and forms appropriate for the different job categories for use in interviewing applicants for positions. All persons involved in interviewing applicants will be instructed in the use of the procedures and forms, and such information will be distributed annually during the term of this Agreement for reference.  Compliance with the procedures and use of the standardized forms will be mandatory.

3.    **Review of Selection Process** – The Company will work with a vendor in the design and implementation of the selection process detailed herein.  The vendor will review the procedures and forms developed and will make suggestions for improvements where necessary.  The vendor's report will be provided to the Company, and the Company will certify to Opposing Counsel that this has been done.

4.    **Tests** -- To the extent that any tests are used in the selection process for the hiring of applicants or promotion of employees, the Company will review the use of such tests to determine if the tests have a statistically significant adverse

impact on its qualified African-American applicant pool and if so, those tests will be validated by an outside vendor. If the test cannot be validated, the Company will discontinue use of the test(s).

**D.      Performance and Compensation**

1.      **Evaluations** -- The HR staff at the Company's Memphis, Tennessee facilities will implement standardized evaluation procedures and forms appropriate for the different job categories for use in evaluating employees. The vendor will review these standardized procedures and forms before implementation and make recommendations related to the design and implementation of the system, including how the system is communicated to employees and how managers and supervisors are trained on using the system. All managers and supervisors involved in evaluating employees will be instructed in the use of the procedures and forms and will be required to follow those procedures.

2.      **Incentive Compensation** -- To the extent that the Company provides for incentive compensation, specific criteria for the amount of incentive compensation awarded and the standards for securing such incentive compensation will be made available to eligible employees, as well as to an employee who changes positions that affect incentive compensation within the Company.

3.      **Salary** -- The Company will review annually the compensation of all employees at its Memphis, Tennessee facilities to ensure that any differences in compensation are not based on race and will make any necessary adjustments.

E.    **Diversity Initiatives**

1.    **Diversity Council** -- An advisory Diversity Council to include members selected from the managers and employees at the Company's Memphis, Tennessee facilities will be established to serve as a resource for increasing diversity awareness in the workplace. No more than 50% of the Diversity Council may be exempt executives. The Council will meet with the Vice President of Human Resources at least twice a year to advise the Vice President on potential avenues for improved diversity relations.  The Council will meet on company time.  Managers and employees will receive no additional compensation for serving on the Council or participating in its activities. The Diversity Council will be established within the first twelve (12) months of the Effective Date hereof, and will remain in place for no less than twenty-four (24) months after its first meeting.

F.    **Enforcement**

1.    **Compliance Manager** -- The Company agrees to designate a Manager of Compliance who will be charged with overall responsibility for monitoring and assuring compliance with the terms of this Agreement.  The Compliance Manager will serve as a liaison with the Vendor and will work with HR, the Diversity Council, and the Company to ensure that all aspects of the non-monetary relief provisions of this Agreement are adhered to.  The designated Manager of Compliance will be required to attend at least two days of training focused on EEO Best Practices and/or affirmative action compliance. The Compliance Manager will provide a presence throughout the Company's Memphis, Tennessee facilities, and the Company will inform employees annually during the term of this Agreement about the role of the Compliance Manager

and make that Manager accessible to employees who have complaints or concerns about the implementation of the procedures and policies contained herein.

> 2.    **Adherence to Procedures** – The adherence of managers and supervisors to the Company's established policies and procedures, including those established herein, will be a factor used in evaluating that manager's or supervisor's performance. Managers and supervisors will be advised that failure to follow established policies and procedures, including those established herein, will subject the manager or supervisor to a negative evaluation and/or disciplinary action. Managers or supervisors who repeatedly fail to adhere to these policies and procedures will be subject to disciplinary action up to and including termination.

## X.    Monetary Relief

### A.    Total Settlement Amount

The Company will pay a total settlement amount of up to $3,405,000.00, exclusive of attorneys' fees and costs. From this amount, payments will initially be made to the Settlement Class Representatives in the amounts set forth below in Section C. After payment is made to the Settlement Class Representatives, the Settlement Class Members may receive settlement payments totaling up to $3,145,000 in accordance with the procedures set forth below in Section B. Any amount of the total settlement amount that remains unpaid after these payments reverts to the Company.

### B.    Payment to the Settlement Class

The Company will make payments to the Settlement Class Members pursuant to the Type I and Type II allocations described herein. All Settlement Class Members (other than the Settlement Class Representatives) will have the opportunity to file either a Type

I or a Type II Claim. For Settlement Class Members who are or were employed by Defendant, the Type I and Type II Claim forms will include a claim regarding pay and/or a claim regarding promotion. If a Settlement Class Member files both Type I and Type II Claim forms, only the Type I Claim form will be processed; the Type II Claim form will be discarded. Any Settlement Class Member who has never been employed by Defendant filing either a Type I or Type II Claim must at the time of filing that claim execute a sworn claim form containing a release of claims against Released Parties and asserting that he/she applied for a position(s) with the Company during the designated time period; was not offered the position(s); believes that he/she was discriminated against based upon race (African-American); and has not previously signed a release of claims against the Company. Any Settlement Class Member who is or was employed by Defendant filing either a Type I or Type II Claim must at the time of filing that claim execute a sworn claim form containing a release of claims against Released Parties and asserting that he/she was paid less than a similarly situated white employee in the same position and/or sought another position with the Company that was not offered to him/her; believes that he/she was discriminated against based upon race (African-American); and has not previously signed a release of claims against the Company. The Type I Claim form is attached as Exhibit B-1 (for applicants not hired); Exhibit B-2 (for employees who are no longer employed); and Exhibit B-3 (for employees who are currently employed). Settlement Class Members who choose to file a Type II Claim instead of a Type I Claim will also be required to submit additional detailed information regarding the specific circumstances of the alleged discrimination claim. The Type II Claim form is attached as Exhibit C-1 (for applicants not hired); Exhibit C-2 (for employees who are no longer

employed); and Exhibit C-3 (for employees who are currently employed).  No amounts will be paid to any Settlement Class Member (except Settlement Class Representatives) until the entire claims process has been completed.   All amounts paid will have withholding taxes deducted from the payment.  Class Members who were applicants for employment with the Company, but were not hired, will be required to provide their Social Security number to the Company before any payment will be made.  Class Members who have pending bankruptcies as of the time they submit a Claim form will also be required to provide information on such bankruptcies, and any payment that would otherwise be made to the Class Member will be made to that Class Member's Trustee in bankruptcy.

### 1.      Type I Claim

Once the Settlement Class Member completes and signs the Type I Claim form described above, he/she will have no further proof requirement. For each Settlement Class Member who files a Type I Claim asserting a failure to hire or promote claim, a Claims Administrator, selected and compensated by the Company, will review the Type I Claim to determine that the person filing the claim: 1) is African-American; 2) applied for or sought a position with the Company; 3) was not offered the position with the Company; 4) believes he/she was discriminated against based on race; and 5) has not previously signed a release of claims against the Company. For Settlement Class Members asserting a pay claim, the Claims Administrator will review the Type I Claim to determine that the person filing the claim: 1) is African-American; 2) was paid less than a similarly situated white employee in the same position; 3) believes he/she was discriminated against based on race; and 4) has not previously signed a release of claims

against the Company.   If the Settlement Class Member meets these eligibility criteria, then the monetary recovery for a Type I Claim will be determined pursuant to the following schedules and may be awarded on a pro rata basis if the total payout to Type I and Type II claimants would otherwise exceed $3,145,000:

Pay Claim Only

| Job Held in Pay Grade | Recovery Up To |
|---|---|
| H or A | $200.00 |
| B or SLS | $300.00 |
| C or D | $500.00 |

Failure to Hire/Promote Claim Only

| Applied for/Sought Job in Pay Grade | Recovery Up To |
|---|---|
| H or A | $800.00 |
| B or SLS | $1,200.00 |
| C or D | $1,500.00 |

Pay and Promotion Claim

| Held/Sought Job in Pay Grade | Recovery Up To |
|---|---|
| H or A | $1,000.00 |
| B or SLS | $1,500.00 |
| C or D | $2,000.00 |

A Settlement Class Member may recover for only one job even though he/she may have applied for or sought multiple jobs or held multiple positions where he/she was paid less

than a similarly situated white employee in the same position. If a Settlement Class Member applied for or sought jobs in different pay grades or held multiple positions where he/she was paid less than a similarly situated white employee in the same position, he/she may recover for only the job applied for or held in the highest pay grade.

### 2.    Type II Claim

Settlement Class Members who choose to file a Type II Claim for failure to hire or promote must submit with their Type II Claim form proof that they met the posted qualifications or skills for the position for which they applied and that the position applied for or sought was filled by a non-African-American. Settlement Class Members who choose to file a Type II Claim for pay must submit proof that they were paid less than a similarly situated white employee in the same job. The Company will have an opportunity to present a rebuttal to the Type II Claims evincing that race was not a factor in the selection decision or pay differential. Type II Claims will be reviewed by a Special Master jointly selected and retained by the parties and compensated by the Company. The Special Master will make the final determination as to whether the Settlement Class Member is entitled to any monetary recovery. If the Special Master decides that the Settlement Class Member is entitled to recovery, the maximum monetary recovery for a Type II Claim will be determined pursuant to the following schedules:

Pay Claim Only

| Job Held in Pay Grade | Recovery Up To |
| --- | --- |
| H or A | $1,000.00 |
| B or SLS | $2,000.00 |
| C or D | $3,000.00 |

Failure to Hire/Promote Claim Only

| Applied for/Sought Job in Pay Grade | Recovery Up To |
|---|---|
| H or A | $2,000.00 |
| B or SLS | $3,000.00 |
| C or D | $4,000.00 |

Pay and Promotion Claim

| Held/Sought Job in Pay Grade | Recovery Up To |
|---|---|
| H or A | $3,000.00 |
| B or SLS | $5,000.00 |
| C or D | $7,000.00 |

The Special Master may award recovery for only one job per Settlement Class Member even though the Settlement Class Member may have applied for or sought multiple jobs or held multiple positions where he/she was paid less than a similarly situated white employee in the same position. If a Settlement Class Member files both a Pay and Promotion claim but the Special Master determines that recovery should be awarded for only one of the claims, then the schedule for that claim only will be used in determining the amount, if any, of the recovery. Class Members who file a Type II Pay and/or Promotion claim and who have been employed by Smith & Nephew more than five full anniversary years as of the time of the Court's Preliminary Approval Date may be eligible for a single additional award of up to $500.00 depending on such factors as the number of times and the dates the Class Member has been improperly passed over for promotion and/or the amount of monetary loss. The Special Master may determine that a Settlement Class Member is not entitled to any monetary recovery, to a lesser amount, or

to a pro rated amount if the total payout to Type I and Type II claimants would otherwise exceed $3,145,000.

### C.      Payment to Settlement Class Representatives

Class Representatives Angela Wooten, Sonja Dowell, Tracy Lemon, Crystia Davis-Mitchell, Shunda Phillips, Leslie Parson, Jr., Jeffrey Valentine, Donna Harvey, Yolanda Yvette Newson, Kevin Gray, Sr., Lenora Woodhouse, and Leno Perkins will not be eligible to file either a Type I or a Type II Claim.   Instead, the twelve Class Representatives will receive monetary amounts from a settlement fund totally $260,000.00. Payments will be allocated fifty percent (50%) as wages, less applicable withholding taxes, and fifty percent (50%) as alleged non-economic damages, for which a Form 1099 will be issued.   The amount paid will satisfy fully all claims they have brought or may have brought against the Company and/or any of the Released Parties up to and including the date of Preliminary Approval and will compensate them for the services they have provided to the Settlement Class during this litigation.   Before receiving any payment, each Settlement Class Representative will be required to sign a release of all claims against Released Parties.

### XI.      Attorneys' Fees and Expenses

The Company will pay to Class Counsel the total amount of $1,015,000.00 which includes all fees and expenses incurred by Class Counsel in this matter.  Payment to Class Counsel will be made thirty days after the Effective Date.

### XII.      No Modification of Section 1981, Title VII, or the THRA

Nothing in this Agreement may be taken as modifying either the statutory or regulatory procedures pertaining to initiating and maintaining administrative and/or

judicial proceedings under the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended; and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-401, or the requirement to exhaust administrative remedies prior to initiating suit.

## XIII.   Procedures for Fairness Hearing

Subject to approval by the Court, the parties hereby agree to the following procedures and schedule for notice to Settlement Class Members and submission of this Agreement to the Court for approval pursuant to Rule 23(a) of the Federal Rules of Civil Procedure.

A.   At the time this Agreement is submitted to the Court, the parties each agree to represent to the Court that in their opinion the Agreement is fair, reasonable, and adequate to the Settlement Class as a whole, within the meaning of that phrase contemplated by Rule 23(e) of the Federal Rules of Civil Procedure.  Counsel for the parties shall request prompt judicial approval of this Agreement as written.

B.   Attached hereto as Exhibit A is a proposed Notice of Class Action Settlement and Fairness Hearing, which the parties hereby request that the Court approve. Within thirty (30) days after the Preliminary Approval of this Agreement, the Claims Administrator will send a copy of the Notice of Class Action Settlement and Fairness Hearing by e-mail to the last known e-mail address of each Settlement Class Member or by first-class mail, United States Postal Service, to the last known address if there is no known e-mail address.  To facilitate this notice distribution, the Company will provide a list of Settlement Class Members and their addresses and social security number, if known, to the Claims Administrator within twenty (20) days following Preliminary

Approval of this Agreement in a format designated by the Claims Administrator.  The Claims Administrator will make reasonable efforts to trace the address of any Settlement Class Members whose notice is returned and will then re-send the notice to the resulting address.  The Claims Administrator will not, however, make any affirmative efforts to solicit Settlement Class Members to file claims or to persuade them as to which type of claim to file.

C.     The parties agree to request that the Court schedule a hearing to determine whether this Agreement is fair, reasonable, and adequate to the Settlement Class as a whole (the "Fairness Hearing"), as required by Rule 23(e) of the Federal Rules of Civil Procedure, at the earliest practicable time on or after ninety (90) days following Preliminary Approval of this Agreement.

D.     Any Settlement Class member who wishes to object to the terms of this Agreement, or its implementation with respect to him/her, will be required to submit to the Court, not later than sixty (60) days after the Preliminary Approval of this Agreement (the "Cutoff Date"), which will be stated as a "date certain" in the Notice of Class Action Settlement and Fairness Hearing sent to the Settlement Class, a written statement of any objections, with copies to counsel for both parties.  The statement will comport with the procedures set forth in the Notice of Class Action Settlement and Fairness Hearing.  The statement will contain the individual's name, address, and telephone number along with a statement of his or her objection(s) to the Agreement and the reason(s) for those objection(s), and an express statement of whether he/she wishes to speak at the Fairness Hearing.

E.    Any attorney retained by an individual Settlement Class Member at his/her own expense to submit objections and/or appear at the Fairness Hearing on his/her behalf must, not later than the Cutoff Date, identify him/herself in writing to the Court, submit written objections, and state expressly whether he or she desires to speak at the Fairness Hearing.  The statement must comport with the procedures set forth in the Notice of Class Action Settlement and Fairness Hearing.  Objections raised at the Fairness Hearing will be limited to those matters addressed in timely written objections.

F.    Counsel for the Company and for the Settlement Class may conduct discovery regarding the substance of any objections on an expedited basis, so that the Fairness Hearing is not delayed thereby.

## XIV.  Duty to Support and Defend the Agreement

The Class Representatives, Class Counsel, and the Company each agree to abide by all of the terms of this Agreement in good faith and to support it fully, and will use their respective best efforts to defend this Agreement from any legal challenge, whether by appeal, collateral attack or otherwise.

## XV.   Applicable Contract Principles

### A.    Entire Agreement

This Agreement and its exhibits constitute the entire agreement and understanding between the parties and supersede all prior written or oral agreements. No representations or inducements to compromise this action have been made, other than those recited in this Agreement.

**B.     Severability and Modification**

**1.     Severability** -- Each provision and term of this Agreement will be interpreted in such a manner as to be valid and enforceable.  If after Final Approval any provision or term of this Agreement should be determined to be or rendered unenforceable on collateral review, all other provisions and terms of this Agreement and the application to all persons and circumstances will remain unaffected to the extent permitted by law; however, under no circumstances will the settlement amounts payable by the Company be increased above those set forth in this Settlement Agreement.

**2.     Modification** -- Class Counsel and Defendant may jointly agree in writing to modify this Agreement, as may be necessary to fully effectuate its purpose while allowing Defendant to appropriately adapt their operations to changing circumstances.  In the event of such a modification, Class Counsel and Defendant may notify the Court, but formal Court approval of such modification is not required.

**C.     No Waiver**

The waiver by any party of any term, condition, covenant, or representation of this Agreement, or breach of any term, condition, covenant, or representation herein, in any one instance, will not operate as, or be deemed to be a waiver of, the right to enforce any other term, condition, covenant, or representation.  The failure by any party at any time to enforce, or require performance of this Agreement will not operate as a waiver of, or limit such party's right at a later time to enforce or require performance of such provisions or of any other provisions of this Agreement, subject to the limits of the Court's jurisdiction set forth above in Section III.

**D.      Governing Law**

The parties agree that the validity, construction, and enforcement of this Agreement will be governed by federal law. To the extent it is determined that the validity, construction, or enforcement of any portion of this Agreement is governed by state law, the law of the State of Tennessee will apply.

**E.      Drafting**

This Agreement is deemed to have been drafted jointly by the parties. Any uncertainty or ambiguity will not be construed for or against any other party based on attribution of drafting to any party.

**F.      Headings**

The headings in this Agreement are for the convenience of the parties and do not limit, expand, modify, or aid in the interpretation or construction of this Agreement.

**G.      Counterparts**

This Agreement may be executed in one or more counterparts, and each executed copy will be deemed an original, which will be binding upon all parties to this Agreement.

**H.      Extension of Time by Agreement of Parties**

All time deadlines established in this Agreement may be extended by written agreement of the parties.

**I.      Binding Agreement**

This Agreement is binding on all parties and their successors, assigns, representatives, and trustees.

**AGREED:**

Dated this 24th day of November, 2009.

    Frederick J. Lewis, Filing User, certifies that all signatories to this document have

consented to its filing.

s/David Sanford
David Sanford, D.C. Bar No. 457933
**SANFORD, WITTELS & HEISLER, LLP**
1666 Connecticut Avenue, N.W.
Suite 310
Washington, D.C.  20009
(202) 742-7780
(202) 742-7776 (Facsimile)

s/Frederick J. Lewis
Frederick J. Lewis, TN Bar # 007859
Thomas L. Henderson, TN Bar # 11526
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P. C.**
6410 Poplar Ave., Suite 300
Memphis, TN  38119
(901) 767-6160
(901) 767-7411 (Facsimile)

s/Grant Morris
Grant Morris, D.C. Bar No. 926253
**LAW OFFICE OF GRANT E. MORRIS**
1666 Connecticut Ave., N.W.
Suite 310
Washington, D.C.  20009
(202) 742-7780
(202) 74207776 (Facsimile)

**COUNSEL FOR SMITH &**
**NEPHEW, INC.**

s/Jerry Gonzalez
Jerry Gonzalez, Esq.
**JERRY GONZALEZ, PLC**
2441-Q Old Fort Parkway
Box 381
Murfreesboro TN 37128
(615) 360-6060
(615) 360-3333 (Facsimile)

**CLASS COUNSEL**

## CERTIFICATE OF SERVICE

I hereby certify that I have, this 24th day of November, 2009, caused the foregoing to be electronically filed using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

> David Sanford, Esq.
> SANFORD WITTELS & HEISLER, LLP
> 1666 Connecticut Avenue, N.W., Suite 310
> Washington, DC 20009

> Grant E. Morris, Esq.
> LAW OFFICES OF GRANT E. MORRIS
> 1666 Connecticut Avenue, N.W., Suite 310
> Washington, DC 20009

> Janette Wipper, Esq.
> Jeremy Heisler, Esq.
> Steven Wittels, Esq.
> SANFORD WITTELS & HEISLER, LLP
> 950 Third Avenue, 10th Floor
> New York City, NY 10022

> Jerry Gonzalez
> Jerry Gonzales, PLC
> 2441-Q Old Fort Parkway
> Box 381
> Murfreesboro, TN  37128

> s/Frederick J. Lewis